The bill is for the purpose of enforcing a vendor's lien in favor of plaintiff reserved in a deed executed to Nannie E. Sine, dated the 9th day of June, 1921. The deed recites a consideration of $8,750, $2,187.50 of which was cash, and the remainder of $6,562.50 to be paid in four equal installments, with interest, at six, twelve, eighteen and twenty-four months after date, evidenced by notes of the grantee, with J. E. R. Sine as surety, and for the payment of which balance of purchase money so evidenced the vendor's lien, sought to be enforced, was retained. The cross bill answer admits the making and delivery of the deed and execution of the notes, but avers that there is a large deficiency in the acreage conveyed; that the sale was by the acre at $75 an acre; and that the clause, "said land is conveyed in gross and not by the acre," contained in the granting part of the deed, was fraudulently and surreptitiously inserted therein and is not binding upon the grantee; and prays that an abatement of the purchase price be made to defendant for the deficiency at $75 per acre. The decree complained of granted the relief prayed for in the cross bill answer and gave an abatement amounting to the sum of $2,156.25 from the purchase price, being 28.75 acres (the deficiency) at $75 per acre, and directed that the same be credited upon the unpaid purchase money notes. From this decree this appeal was awarded.
It appears that plaintiff, a widow, was a daughter of Benjamin B. Stout, who, in his life time, acquired real estate near "Quiet Dell" in Harrison county, amounting in all to about 1180 acres, the deeds therefor being from many persons. Prior to his death, with a view of making his Will, he had a plat made of these lands and in his will devised to *Page 636 
plaintiff a portion of these lands which he described in the will by the adjoining farms, courses, distances and fixed monuments, and as containing about 170 acres, being made up of land conveyed to him by Lawson, special commissioner, the heirs of Joseph Reynolds, deceased, and Worthy Law. This land so devised is the subject of the litigation.
Plaintiff and her husband lived in Clarksburg, and the latter looked after the land for about two years until his death. Subsequent to his death she rented the land for grazing purposes, and it was rented at the time this sale was made. The tract was charged to her on the land books for assessment purposes as 170 acres. It appears that there had never been a survey. The front portion of the farm abutted on the Clarksburg-Buckhannon pike near one of the suburbs of the city of Clarksburg, and was joined to the rear portion by a narrow neck. Some time prior to June 9, 1921, J. E. R. Sine, husband of Nannie E. Sine, approached plaintiff for the purpose of purchasing this tract of land. He dealt in real estate, and for several years prior thereto had made a business of purchasing real estate in the suburbs of thriving towns and cities, cutting it up into suburban lots and selling the same at auction. He desired this farm partially for that purpose; and that portion containing about 34 acres adjoining the pike was actually laid off in lots and later sold by him at auction. After some negotiations in which he made a personal inspection of the farm, examined the will of Benjamin Stout, the county records, and the plat made by Horner Brothers, engineers, for the old gentleman for the purpose of making his will, plaintiff and defendant met a few days prior to June 9, 1921, at the office of Harrison, plaintiff's attorney, where, after extended conference, they finally agreed upon the terms of the contract. It appears that defendant wanted the property divided and two deeds made therefor; a deed to him for the front tract which he designed to and did sell as surburban lots, without a vendor's lien reserved thereon; and that the rear portion of the land should be deeded to his wife, defendant Nannie E. Sine, and the vendor's lien retained upon that tract. There were also negotiations concerning the oil and gas interests in the land. Plaintiff objected *Page 637 
to the division of the land as suggested, and would not agree to include any portion of the oil and gas interests in the deed, but finally she did agree to the making of two deeds as requested and made some concession as to the oil and gas interests. The total purchase price was agreed upon as $12,750, and which, it will be noted, is a multiple of 170 acres at $75 per acre. The deed to J. E. R. Sine was prepared, the consideration therefor being $4,000 cash, and the land described by metes and bounds as containing 40 acres, more or less. This original draft was changed, at Sine's request, so as to show a consideration of $1.00 and other valuable considerations. The material portions of the Nannie E. Sine deed for the rear tract are hereinbefore stated.
It will be observed that the whole controversy turns upon a solution of the issue whether the land was sold in gross or by the acre. Plaintiff asserts that it was sold in gross at the sum of $12,750; while defendant asserts he purchased the land by the acre at $75 per acre, the purchase price of $12,750 being the exact multiple of 170 acres at $75 per acre.
It is well settled that if the land was sold in gross and not by the acre, there can be no abatement of the purchase price for mistake in the quantity of the land, unless fraud either actual or in contemplation of law entered into the transaction.Adams v. Baker, 50 W. Va. 249; Newman v. Kay, 57 W. Va. 98. Of course, fraud vitiates contracts of every kind. Where the sale is in gross, payment for deficiency in the acreage cannot be allowed on the ground that there was a mistake only can it be allowed where there is fraud, actual or legal. The cases ofWestern M. M. Co. v. Peytona Cannel Coal Co., 8 W. Va. 406;Crislip v. Cain, 19 W. Va. 438; Hansford v. Coal Co., 22 W. Va. 70, and Pratt v. Bowman, 37 W. Va. 715, in so far as they hold that a contract of sale of land in gross may be rescinded on the ground of mutual and innocent mistake as to the quantity of the land sold, resulting in an excess or deficiency, no other ground for relief being shown, is expressly overruled by Newman v. Kay, above cited. In determining the question at issue, whether the sale was in gross or by the acre, we must first look to the deeds themselves, and when we do so there can be no question that by them, on *Page 638 
their face alone, the sale was in gross. In the deed to Nannie E. Sine the land is described by metes and bounds, the sum of $8,750 is stated as the purchase price, the acreage as 130 acres "more or less," and refers to the will of Benjamin Stout for a more particular description, and then follow the words, "said land is conveyed in gross and not by the acre." In the deed to J. E. R. Sine the land is also described by metes and bounds, the consideration named is $1.00 and other valuable considerations, the acreage is stated as 40 acres "more or less," and also refers to the Benjamin Stout will for more particular description; and we find the same clause, namely, "said land is conveyed in gross and not by the acre." It will be noted that the sum of $8,750, stated as the purchase price in the Nannie E. Sine deed, is not a multiple of 130 acres at $75 per acre. These deeds, like any other written agreement, are the repository of the contract. Indeed, they are much more solemn than the usual unsealed agreement not acknowledged for record. They are a solemn declaration of all the covenants comprised in them or intended to be made between the parties, and none other. Johnson v. McClung, 26 W. Va. 668. A deed is a writing to prove and testify the agreement of the parties thereto to the things therein contained. Shep. Touch. 50;American B. O. S. M. Co. v. Burlack, 35 W. Va. 648;14 S.E. 319. By these deeds the parties solemnly agreed that the sale was in gross and not by the acre. There is no ambiguity, nothing which calls for explanation; and no extraneous evidence is needed to interpret them. The declarations, conversations and interlocutions of the parties at and before the execution of the deeds are not admissible to explain, modify or annul the clearly expressed meaning.
But the cross bill answer says that the words "said land is conveyed in gross and not by the acre" were fraudulently inserted in the deeds without the knowledge or consent of the grantees. While the reformation of the deeds is not prayed for, the relief is somewhat similar to that which would be given in a proceeding of that character. Defendant does not ask that the deeds be set aside for fraud. He has surveyed and sold as town lots that portion deeded to him. After he *Page 639 
had surveyed the front portion he discovered there was a deficiency therein of about six acres; subsequently to the sale of town lots he had the rear portion surveyed and found that there was a deficiency of about 22 acres. The exact deficiency claimed in the whole tract is 28.75 acres. It is because of the alleged surreptitious and fraudulent insertion in the deeds of the words above quoted that we are asked to disregard them and to look to the negotiations and conversations leading up to the making of the deeds and determine therefrom that the parties intended a sale by the acre and not in gross. Logically, the first point to be considered is the charge of fraud in the insertion of these words in the deed, for if no fraud enters, the sale is clearly one in gross, and compensation cannot be given for deficiency on the ground of mistake as to quantity. Land sold in gross is a contract of hazard as to the quantity sold. If the charge of fraud in the insertion of these words is not sustained we cannot look beyond the deeds to determine the questions at issue. The burden is upon the defendant to clearly prove this charge of fraud as set out in the cross bill answer. It is fundamental that fraud must be clearly alleged and as clearly proved. As before stated, the parties, after some preliminary negotiations, met at the office of the plaintiff's attorney, Harrison, a few days before the 9th of June, 1921, for the purpose of closing their contract. They then agreed, and Harrison was directed to draw up deeds in accordance with the contract. He went to the county records, and copied the calls, distances, monuments and description of the land as found in the will, and made a rough pencil sketch thereof, drawing a line across the narrow neck separating the front portion from the rear land, and drew the deeds accordingly, stating in the deed to J. E. R. Sine the stipulated cash purchase price of $4,000. According to the testimony of plaintiff and Harrison it was agreed that the land was to be conveyed in gross. They are corroborated in this statement by Miss Watson, Harrison's stenographer, who heard part of the conversation as the parties emerged from Harrison's private office into the waiting room where she was sitting. She said the question of acreage was talked of by Mrs. Southern, who said she did not know the acreage *Page 640 
except from what was in the will, when Harrison suggested that the deeds ought to show a sale in gross, to which suggestion Sine assented, saying, "Oh, sure, sure." She says her attention was held by the expression "in gross" as she did not know what it meant. On the following morning the deeds were dictated to her by Harrison, and the expression "in gross and not by the acre" was dictated to her and transcribed in the deeds prepared, and upon her inquiry as to what "in gross " meant Mr. Harrison explained to her the meaning of the phrase. She says she had never before that time prepared a deed with that clause in it. She transcribed the deeds as dictated. Harrison gives the same testimony in more detail, and is further corroborated by plaintiff. Sine denies this conversation and denies that the sale was to be in gross. He says he did not leave the office in company with Mrs. Southern and Harrison. Harrison says the carbon copies, together with the pencil plat of the land, were, a short time after they were prepared, delivered to Sine for his inspection, and were carried away by him for that purpose and for submission to his attorney for his examination. Sine admits receiving and carrying away the carbon copies and pencil plat, and says he went over them very carefully, submitted them to his attorney for examination, and looked up certain records in the county clerk's office. He is not positive that the phrase "said land is conveyed in gross and not by the acre," was not in the carbon copies. In answer to a direct question on this point he says, "they did not, to the very best of my recollection, for I surely would have noticed such an unusual clause." The attorney who examined the carbon copies was not examined as a witness. Later the carbon copies were found, identified by Williams as such, placed in evidence, and they contain the disputed clause. After Sine had examined the carbon copies and submitted them to his attorney, who approved them, the parties again met at Harrison's office to formally exchange the deeds, notes and make the down payment. Mrs. Sine was also present. Harrison and Mrs. Southern say the deeds were read by Harrison in the presence of all of them, and there was no objection except Sine desired some minor changes which were made, notably *Page 641 
the consideration in the deed to him, stated at $4,000, was changed to "$1.00 and other valuable considerations," which change was made and the deeds then formally acknowledged and delivered to Sine. Mrs. Sine is not positive that the deeds were read; and Sine says that if they were read he did not hear them, as he was making calculations and drawing notes, checks or something of that kind. He says when he observed that the change suggested by him had been made he looked no further. He took the deeds, placed them upon record, surveyed the front land, discovering a shortage therein of 6 acres, but laid it off into lots and sold the same at auction. He then made a survey of the back land and discovered a shortage there, the total shortage being 28.75 acres less than 170 acres. We are clearly of the opinion that Sine has failed to carry the burden of proof on his allegation of fraud and deceit in the preparation and delivery of the deeds. On the contrary, the evidence fully sustains the proposition that it was understood that this controverted expression of sale in gross and not by the acre was to go in the deed, and that it was actually written therein and submitted to Sine and his attorney for inspection. The charge of fraud is not sustained. Shall we look further, and consider the negotiations leading up to the consummation of the sale and the reduction of the agreement to writing? Can such evidence be considered to contradict the plain words of the deed? It may be pertinent to say that there is very much evidence tending to show that Mrs. Southern sold the land with the understanding that she did not know the acreage therein except from what appeared in the will of her father and from the plat made by the engineers, Horners, before his death, which information she gave to defendant when he approached her to buy. She says she offered her farm at the price of $12,750, arriving at that sum by the price of $75 an acre for the supposed number of acres which it contained. There is much evidence to bear out her statement. On the contrary Sine says she represented to him that she had 170 acres, which she would sell to him at $75 an acre, and that the sale was by the acre and not in a boundary. This case illustrates the wisdom of the rule that oral testimony will not be allowed to *Page 642 
contradict or explain a writing unambiguous on its face and in which the parties have solemnly joined. The uncertain, slippery memory of man does not have weight to contradict or set aside that which is written and which is made for the purpose of recording the agreement and perpetuating it beyond question. Mrs. Southern says Sine did not wish a survey to be made, but having examined the property and the title papers was satisfied to take it as a boundary. She is corroborated in this by Harrison. On the other hand Sine says she refused to have a survey, being positive in her statement that she owned 170 acres. There seems to have been no understanding that a survey should be made, and if there had been this would be a fact tending to show a sale by the acre. Bierne v. Erskine, 5 Leigh, 59; Nelson v. Carrington, 4 Munf. 332; 6 Am. Dec. 519;Clute v. Jones, 28 N.Y. 280. And the fact that a survey is dispensed with tends to show a sale in gross. Rogers v.Garnett, 4 T. B. Mon. (Ky.) 269; Shoemaker v. Cake, 83 Va. 1. And whether the purchase price is an exact multiple of the number of acres is also a fact that may be considered, but is by no means conclusive. Crislip v. Cain, 19 W. Va. 438;Sweet v. Marsh, 133 A.D. 315; and Weaver v. Carter, 10 Leigh 37. As before stated, it will be observed that the consideration of $8,750 in the deed to Mrs. Sine, is not a multiple of the number of acres conveyed to her at $75 an acre. Nor is the consideration paid by Sine for the 40 acres deeded to him, that is $4,000, an exact multiple of $75 an acre. The front land was regarded as more valuable than the back portion, and this was one of the reasons why the plaintiff did not desire to make two deeds, as her security for the balance of the purchase money would not be so great as if it was upon the entire land; and moreover, she was careful to provide for a right of way from the backland over the front and to the pike. Even if the sale could be considered as one by the acre and not in gross, it may be suggested that possibly the amount of abatement allowed is not the proper one. But this we do not decide, as it is not necessary. Having come to the conclusion that the cause in the deeds making it clear beyond peradventure that it was a sale in gross and not by the acre, was there at the *Page 643 
time the carbon copies were submitted to Sine for his inspection and the approval of his attorney; and was also in the deeds at the time they were acknowledged and delivered, and was not fraudulently or surreptitiously inserted therein, defendant will not be heard to say he did not know what the deeds contained. It was his duty to know. The law says that he shall know. If he did not read the deeds at any time before acceptance it was clearly his fault and negligence. Moreover, he says he read them and is not clear in his statement that the controverted clause was not contained therein. It would be rather unusual for a man of his apparent intelligence and business experience, engaged in purchasing real estate for the purposes of the market, not to know what was being conveyed to him and the terms thereof.
We are clearly of the opinion that there is error in the decree and that there should be a recovery in favor of plaintiff for the balance of her purchase money as represented by the purchase money notes. The decree will be reversed and the cause remanded.
Reversed and remanded.