575 S.E.2d 88

**Deborah H. JIVIDEN, Petitioner
Below, Appellant,**

v.

**Dale R. JIVIDEN, Respondent
Below, Appellee.**

No. 30400.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 2002.

Decided Oct. 11, 2002.

Dissenting Opinion of Justice
Albright Oct. 31, 2002.

Dissenting Opinion of Justice
Starcher Dec. 10, 2002.

Maureen Conley, Appalachian Legal Services, Charleston, for Appellant.

David L. White, Masters & Taylor, L.C., Charleston, for Appellee.

PER CURIAM:

Deborah H. Jividen, appellant/defendant below (hereinafter referred to as "Ms. Jividen"), appeals from an order of the Circuit Court of Kanawha County denying her Rule 60(b) motion. Ms. Jividen seeks to have the circuit court set aside a provision in the divorce decree that awarded her former spouse, Dale Ray Jividen, appellee/plaintiff below (hereinafter referred to as "Mr. Jividen"), the home the couple resided in during the marriage. Specifically, Ms. Jividen seeks to have the home declared marital property for the purpose of having it sold and the proceeds equitably distributed. After reviewing the briefs and listening to oral arguments, we affirm the circuit court's denial of relief.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Prior to the Jividens' marriage, Ms. Jividen resided in a home owned by her son, Richard Harris.[1] At some point, Mr. Jividen moved into the residence with Ms. Jividen. On April 16, 1999, shortly after Mr. Jividen moved into the home, Mr. Jividen paid Mr. Harris $13,000.00 to purchase the residence. Prior to the preparation and recording of a deed for such property, Ms. Jividen and Mr. Jividen were married on June 24, 1999. On September 15, 1999, a deed to the home was duly recorded. The deed stated that the home was being conveyed to Ms. Jividen and Mr. Jividen, as husband and wife, and as joint tenants with right of survivorship.

On August 24, 2000, Mr. Jividen filed for a divorce on the grounds of irreconcilable differences.[2] During proceedings before the family law master, evidence was introduced indicating that when Mr. Jividen purchased the home, it was agreed that the deed would be written to convey the home solely to Mr. Jividen. Evidence was also presented to demonstrate that, without Mr. Jividen's knowledge, Ms. Jividen contacted the lawyer preparing the deed. She instructed the lawyer to include her name on the deed along with Mr. Jividen's.[3]

---

1. Where the sparse appellate record does not provide sufficient information to guide our resolution of this matter, we have relied upon the parties' representations in their briefs to this Court.

2. No children were born of the marriage.

3. During oral argument, counsel for Ms. Jividen sought to dispute the manner in which Ms. Jividen's name appeared on the deed. However, the facts set forth herein are consistent with those contained in the final divorce order.

The family law master issued a recommended decision on June 27, 2001. In that decision, the family law master recommended that the parties be divorced, that Mr. Jividen be given exclusive possession and ownership of the home, and that Ms. Jividen be awarded $1,000.00 for improvements she made to the home during the parties' marriage.

Ms. Jividen, who was represented by counsel, failed to file a petition for review to the recommended decision of the family law master. On June 23, 2001, the circuit court entered an order adopting the recommendations of the family law master. Ms. Jividen did not appeal the circuit court's decree granting a divorce and resolving all equitable distribution issues including disposition of the home.[4] Instead, on September 24, 2001, Ms. Jividen faxed[5] to the circuit court a motion under Rule 60(b) of the West Virginia Rules of Civil Procedure, seeking to challenge the divorce decree's disposition of the home.[6] On October 26, 2001, the circuit court issued an order denying relief. From this order, Ms. Jividen now appeals.

## II.

## STANDARD OF REVIEW

■ This appeal relates directly to the order of the circuit court denying Ms. Jividen's Rule 60(b) motion. We have held that

**4.** During oral argument, counsel for Ms. Jividen indicated that Ms. Jividen did not appeal this order due to confusion between Ms. Jividen and her trial counsel.

**5.** An original copy of the motion was filed on September 25, 2001.

**6.** Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part,

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is

"[a] motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). This Court also noted, in Syllabus point 4 of *Toler* that "[i]n reviewing an order denying a motion under Rule 60(b), W. Va. R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." 157 W.Va. 778, 204 S.E.2d 85. With these standards in mind, we will consider the parties' arguments.

## III.

## DISCUSSION

■ Ms. Jividen argues in this appeal that (1) it was error to find that Mr. Jividen intended to acquire the house solely in his name; (2) it was error to find that the fair market value of the house was $13,000.00; and (3) it was error not to provide equitable distribution of the value of the house.[7] We are sympathetic with Ms. Jividen on each of these issues. However, those issues were

based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

**7.** The family law master made specific findings relating to the parties' intent regarding title to the home and explaining why a true fifty percent equitable distribution of the property would not be appropriate in this case. Additionally, the only evidence presented to the family law master regarding the value of the house was the $13,000.00 purchase price. Ms. Jividen produced no evidence before the family law master regarding the property's value. *See* Syl. pt. 2, in part, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984) ("The price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value.").

not proper for consideration by the trial court under a Rule 60(b) motion.

■ In *Powderidge Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996), Justice Cleckley noted that

> the weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit.... In other words, a Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled.

*Powderidge*, 196 W.Va. at 705–06, 474 S.E.2d at 885–86 (footnote and citations omitted). Moreover, "[i]t is established also that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available but not offered at the original [proceeding]." *Id.*, 196 W.Va. at 706, 474 S.E.2d at 886.

■ Our cases are clear.

> Rule 60(b) ... provides a basis for relieving a party from a final judgment upon the following grounds: (1) mistake, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied or vacated; or (6) any other reason justifying relief.

Syl. pt. 1, in part, *Savas v. Savas*, 181 W.Va. 316, 382 S.E.2d 510 (1989). Therefore " '[a] circuit court is not required to grant a Rule 60(b) motion unless a moving party can satisfy one of the criteria enumerated under it.' " *Jordache Enters., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 204 W.Va. 465, 472–73, 513 S.E.2d 692, 699–700 (1998) (quoting *Powderidge*, 196 W.Va. at 706, 474 S.E.2d at 886). We additionally held, in Syllabus point 2 of *Hustead ex rel. Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 475 S.E.2d 55 (1996), that:

> One of the purposes of West Virginia Rule of Civil Procedure 60(b) is to provide a mechanism for instituting a collateral attack on a final judgment in a civil action when certain enumerated extraordinary circumstances are present. When such extraordinary circumstances are absent, a collateral attack is an inappropriate means for attempting to defeat a final judgment in a civil action.

Ms. Jividen failed to establish before the circuit court any of the grounds for relief under Rule 60(b). Consequently, the only way in which the circuit court could have addressed the substance of her claims was through Ms. Jividen's filing of an exception to the family law master's recommended decision. Ms. Jividen failed to file any pleadings before the circuit court objecting to the recommendations of the family law master.

■ In addition to being foreclosed from bringing the substance of her assignments of error to the trial court under Rule 60(b), Ms. Jividen is also foreclosed from raising those issues before this Court. Our law is quite clear in holding that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review *only* the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. pt. 3, *Toler*, 157 W.Va. 778, 204 S.E.2d 85. *Accord Law v. Monongahela Power Co.*, 210 W.Va. 549, 562, 558 S.E.2d 349, 362 (2001) (per curiam) (Davis, J., dissenting) (internal quotations and citation omitted); Syl. pt. 2, *Rose v. Thomas Mem'l Hosp. Found., Inc.*, 208 W.Va. 406, 541 S.E.2d 1 (2000) (per curiam). In other words, for this Court to reach the substance of the issues presented by Ms. Jividen, her "lawyer should have appealed the judge's [divorce] order[.]" *Rose*, 208 W.Va. at 415–16, 541 S.E.2d at 10–11 (Starcher, J., concurring). Simply put, "Rule 60(b) is not a substitute for an appeal." *Nancy Darlene M. v. James Lee M.*, 195 W.Va. 153, 156, 464 S.E.2d 795, 798 (1995).

We need not consider this matter further. Ms. Jividen provided the circuit court with no basis under Rule 60(b) for disturbing the final divorce judgment. Therefore, the circuit court did not abuse its discretion in denying the motion. *See Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) ("Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire

to reach a different result, but by a firm conviction that an abuse of discretion has been committed." (citation omitted)). Accordingly, we affirm the circuit court's ruling.

## IV.

## CONCLUSION

The circuit court's order denying relief under Rule 60(b) of the West Virginia Rules of Civil Procedure is affirmed.

Affirmed.

Justices STARCHER and ALBRIGHT dissent and file dissenting opinions.

(Filed Oct. 31, 2002)

ALBRIGHT, Justice, dissenting:

The problem with the majority opinion is that it mechanically applies Rule 60(b), a procedural rule whose objective is equitable in nature, to achieve an unjust result in an action that sounds historically in equity. *See Di Vito v. Fidelity & Deposit Co.,* 361 F.2d 936, 939 (7th Cir.1966) (recognizing that "the relief provided by Rule 60(b) is equitable in character and to be administered upon equitable principles"). By rigidly relying on Rule 60(b), all in the name of finality of judgments, the majority has ignored the significance of the remedy at issue—equitable distribution of property—a theory first adopted by this Court,[1] and subsequently embraced with enthusiasm by the Legislature. The majority opinion undeniably represents a high water mark in the succession of "form over substance" decisions that have marred legal jurisprudence over the years.

One issue that has been raised in connection with the lower court's refusal to grant Appellant's Rule 60(b) motion is whether a mistake that significantly affects property valuation has been made. The lower court prevented additional evidence from being considered which suggests that the valuation of the parties' marital home was $28,168, rather than the figure of $13,000, which was the purchase price of the home.

While Rule 60(b) was not designed to encourage or permit the relitigation of issues, it was designed to provide a flexible means of correcting unjust and unfair results. The rule has universally been held to apply in a wide range of circumstances to correct errors of fact or law or judgment. *See generally* Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure: Civil 2nd* §§ 2851 to 2873 (1995).

Even a cursory examination of the countless state and federal cases applying the rule discloses that no one circumstance either mandates or precludes application of Rule 60(b). *See, e.g., Bateman v. U.S. Postal Serv.,* 231 F.3d 1220 (9th Cir.2000) (granting Rule 60(b) relief on attorney error basis where attorney failed to timely respond to summary judgment motion on grounds of excusable neglect); *Whitaker v. Associated Credit Servs., Inc.,* 946 F.2d 1222 (6th Cir. 1991) (recognizing that while gross negligence is generally not enough to set aside judgment under Rule 60(b), mistakes made due to excusable neglect may permit application of rule, especially if circumstances warrant same on equitable grounds); *Blois v. Friday,* 612 F.2d 938 (5th Cir.1980) (holding that doubt on motion to set aside default judgment should be resolved in favor of judicial decision on merits despite technical error or slight mistake by attorney); *L.P. Steuart, Inc. v. Matthews,* 117 U.S.App.D.C. 279, 329 F.2d 234 (1964) (finding that counsel's preoccupation with other matters and failure to notify client that case was dismissed for failure to prosecute justified Rule 60(b) relief after lapsing of one year); *but cf. Solaroll Shade & Shutter Corp., Inc. v. Bio–Energy Sys., Inc.,* 803 F.2d 1130 (11th Cir.1986) (holding that attorney's negligent failure to respond to motion was not excusable neglect despite preoccupation with other litigation); *Coffman v. West Virginia Div. of Motor Vehicles,* 209 W.Va. 736, 551 S.E.2d 658 (2001) (finding absence of exceptional circumstances required reversal of grant of Rule 60(b) relief in case where driver's license was reinstated); *Stanley v. Stanley,* 201 W.Va. 174, 495 S.E.2d 273 (1997) (holding that circuit court

---

1. *See LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983) (recognizing the doctrine of equitable distribution).

erred in not granting Rule 60(b) motion where husband's pension plan was incorrectly valued and parties entered into settlement agreement based on incorrect valuation).

The full range of factual circumstances in any given case must be analyzed to determine if the beneficent purposes of the rule should be applied. An examination of the factual circumstances of this case suggests that Rule 60(b) should be applied to prevent a blatant miscarriage of justice. In instances such as this case where the alleged errors arise from the fault or oversight of individuals other than the parties to the litigation, the need for a rule such as Rule 60(b), which prevents a mistake from creating a permanent injustice as a result of blind adherence to the procedural rules of our judicial system, is even more apparent.

In the case before us, it appears likely that, barring a grant of relief under Rule 60(b), the following results will unfortunately obtain:

1. One party will receive substantially less than half of the marital property for reasons either not articulated or grounded in the failure of counsel to fully prepare;

2. It is (or was) within the easy ability of the trial court to remedy the situation if the evidence there discloses what appears to be the case from the record before us;

3. The sole reason asserted by the majority for not utilizing Rule 60(b) to reach the equitable issues presented by this case is an overblown concern for the finality of a judgment that has not been fully executed and may be modified in one respect or another for years to come; and

4. It appears that the "equitable" division of property here was made in disregard of the general rule of law that a transfer of property from sole ownership by one spouse to joint ownership by both spouses constitutes a gift of one-half of the formerly separate property to the other spouse, converting the transferred property to "marital" property.

Thus, to deny Appellant the right to have her equitable distribution claim fully resolved on its merits is clearly to work an injustice in this case. I cannot sanction such a result,

nor do I think that Rule 60(b) requires such a harsh result. As we recognized in *N.C. v. W.R.C.*, 173 W.Va. 434, 317 S.E.2d 793 (1984): " 'The provisions of this rule [60(b)] must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts.' " 173 W.Va. at 437, 317 S.E.2d at 796 (quoting *Bankers Mortgage Co. v. U.S.*, 423 F.2d 73, 77 (5th Cir.1970)). Finality at the cost of fully considering the merits of an action is simply not the balance of interests that Rule 60(b) requires. Accordingly, I respectfully dissent.

(Filed Dec. 10, 2002)

STARCHER, Justice, dissenting:

I dissent from the majority opinion because I believe that the appellant, Deborah H. Jividen, did not get a "fair shake" from the court system.

The family law master in the instant case set the value of the parties' house at $13,000.00. Ms. Jividen attempted to introduce evidence that the fair market value of the house was $28,168.00. While her attorneys "dropped the ball" and did not introduce this evidence until after the circuit court signed the family law master's recommended order, simple fairness and justice suggest that this case could easily have been remanded to the family law master for reconsideration. If the property increased in value by $15,000.00 (more than doubled in value) during the parties' marriage, that increase in value of marital property is certainly subject to equitable distribution.

Furthermore, I question the family law master's conclusion that appellee Dale R. Jividen intended for the house to be titled solely in his name, a conclusion that resulted in a total disregard for a written, recorded deed showing both Mr. and Ms. Jividen were the grantees to the property. While the house was purchased in April 1999 using money Mr. Jividen inherited, Mr. Jividen did not have a deed on the property prepared until September 1999. Mr. Jividen contends that Ms. Jividen "schemed" to deceive the lawyer who prepared the deed and improper-

ly had her name "secretly" affixed to the deed as a joint tenant with right of survivorship.

It is well-established law that, for a grantor to complete the transfer of ownership of real estate to another person, the grantor must only *deliver* a deed to the grantee (in this case, Mr. and/or Ms. Jividen). Delivery is a simple act: the deed is transferred out of the control of the grantor and into the control of the grantee. Delivery of the deed is the consummation of the transfer of ownership, and is the moment that ownership vests in the people designated in the deed as grantees. *See Holland v. Joyce*, 155 W.Va. 535, 185 S.E.2d 505 (1971) and *Lang v. Smith*, 37 W.Va. 725, 17 S.E. 213 (1893). Recording a deed is evidence that a deed was actually delivered by the grantor to the grantee. Syllabus Point 1, *Liggett v. Rohr*, 122 W.Va. 166, 7 S.E.2d 867 (1940).

Additionally, the parties to a deed have a duty to actually read the document. The parties—both grantors and grantees—are charged with knowing what is in the deed as a matter of law. *See, e.g., Southern v. Sine*, 95 W.Va. 634, 643, 123 S.E. 436, 439 (1924) ("[D]efendant will not be heard to say he did not know what the deeds contained. It was his duty to know. The law says that he shall know. If he did not read the deeds at any time before acceptance it was clearly his fault and negligence."); *R.D. Johnson Milling Co. v. Read*, 76 W.Va. 557, 566, 85 S.E. 726, 730 (1915) ("She can not be heard to say that she was ignorant of its contents, or did not know, when she executed it, that it embraced the 80 acre tract of land. It was her duty to know what was in the deed."); *Whittaker v. South West Virginia Imp. Co.*, 34 W.Va. 217, 228, 12 S.E. 507, 511 (1890) ("One is never required to, and never should, execute any written instrument without first becoming fully acquainted with its contents. He should read it, if able; or if illiterate, have it read to him. And when he has signed a written contract, the law *prima facie* presumes that he discharged this duty; therefore, whether in fact he did it, or chose to waive the privilege, his signature binds him.").

The purpose of a deed is to enshrine in stone, for all the world to see, the parties' agreement to buy and sell a piece of land. Centuries of Anglo–Saxon jurists have frowned upon the use of oral testimony to contradict the unambiguous, explicit, written terms contained in a deed, and in which all parties have joined. "The uncertain, slippery memory of man does not have weight to contradict or set aside that which is written and which is made for the purpose of recording the agreement and perpetuating it beyond question." *Southern v. Sine*, 95 W.Va. at 642, 123 S.E. at 439.

Applying these time-worn legal principles to the instant case, it is clear that a deed conveying the property to Mr. and Ms. Jividen was delivered by Richard Harris. Delivery is clear because the Jividens filed the deed with the county clerk. Mr. and Ms. Jividen had a duty to read and know what was in the deed; if they did not, it was clearly their "fault and negligence." *Southern v. Sine*, 95 W.Va. at 643, 123 S.E. at 439. For a grantee to come back months or years after the transaction and argue that a fellow grantee should be removed from the deed— primarily because the grantees never read the deed—goes against these legal principles.

I therefore respectfully dissent.