668 S.E.2d 176

**Elizabeth A. SEDLOCK and Jason Banish, Plaintiffs Below, Appellants**

**v.**

**Thomas MOYLE, Joann Moyle, Marsha Ann Felton, Jean Hollands Worth, Double H. Realty, Inc., a West Virginia Corporation, David A. Romano and Cathy Joey Romano, Defendants Below, Appellees.**

**No. 33524.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 12, 2008.

Decided May 23, 2008.

---

LaVerne Sweeney, Grafton, for Appellants.

Amy M. Smith, Tiffany A. Swiger, Steptoe & Johnson, PLLC, Clarksburg, for Appellees.

1. At all relevant times, Ms. Felton was a real estate salesperson licensed in West Virginia whose services were retained by Double H Realty.

2. Ms. Hollandsworth was a licensed West Virginia real estate broker and an officer of Double H. Realty, Inc. at the time various events involving this suit occurred.

3. The order was made immediately appealable under Rule 54(b) of the West Virginia Rules of Civil Procedure.

PER CURIAM:

This case is on appeal from the October 24, 2006, final order of the Circuit Court of Harrison County which dismissed, with prejudice, the real estate sales transaction claims of Elizabeth Sedlock and Jason Banish (hereinafter referred to collectively as "Appellants") against Marsha Ann Felton,[1] Jean Hollandsworth[2] and Double H. Realty, Inc. (hereinafter referred to collectively as "Appellees").[3] The dismissal was sought pursuant to West Virginia Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Finding that no duty was imposed upon real estate agents under the circumstances presented, the lower court granted the dismissal, with prejudice. Upon concluding our review of the record in light of the briefs, arguments and relevant law, the action of the lower court is affirmed.

## I. Factual and Procedural Background

The real estate transaction on which this suit is based occurred in 2004. On February 18, 2004, Ms. Hollandsworth obtained an exclusive listing agreement to sell Ms. Sedlock's[4] home in Nutter Fort, West Virginia. Ms. Felton showed the Sedlock–Banish home to Joann and Thomas Moyle. Thereafter on March 29, 2004, Ms. Felton drafted a contract for the sale and purchase of the Sedlock–Banish house to the Moyles. According to the order from which this appeal is taken, the contract included a conditional clause making performance "contingent upon the seller locating acceptable housing."[5]

On June 26, 2004, Appellants entered into a contract to purchase another home owned by David A. Romano and Cathy Joey Romano[6] located in Clarksburg, West Virginia.

4. It is not entirely clear from the record if only Ms. Sedlock owned the house or if ownership was shared with Mr. Banish.

5. A copy of the March 29, 2004, contract is not in the certified record before us. None of the parties contest that the phrase recited in the dismissal order was part of the March 29, 2004, contract.

6. The Romanos are not parties to this appeal.

The contract for the Clarksburg home was expressly conditioned upon the "buyers closing on the sale of their home at 601 Indiana Ave., Nutter Fort, WV 26301 prior to the closing date on 339 Worley Ave., Clarksburg, WV 26301."

Within the statement of facts of the order of dismissal, the lower court noted that the Moyles' offer to purchase Appellants' Nutter Fort home had expired [7] at the time the Romano contract was entered. The Moyles executed a new offer to purchase Appellants' Nutter Fort home on July 5, 2004, by way of a second "Contract for Sale and Purchase" drafted by Ms. Felton. The contingency clause regarding Appellants locating acceptable housing was not in the July 5, 2004, contract. The record reveals that Ms. Sedlock signed the July 5, 2004, sales contract.

On or about August 19, 2004, the Romanos notified their real estate salesperson that they would not sell their house to Appellants despite the June 26, 2004, contract. Appellants chose not to attempt to enforce the Romano contract at that time since they decided to remain in the Nutter Fort home. However, the Moyles enforced their July 5, 2004, contract to purchase the Nutter Fort property and thereby caused Appellants to move from the premises.

Appellants filed a complaint against the Moyles, Ms. Felton, Ms. Hollandsworth, Double H. Realty, Inc., and the Romanos in the Circuit Court of Harrison County on August 18, 2006. On September 15, 2006, Appellees moved the lower court to dismiss the complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. The circuit court granted the motion to dismiss following a hearing. This Court granted the petition for appeal of the dismissal by order entered September 13, 2007.

## II. Standard of Review

■■■ All claims brought against Appellees were dismissed in this case because the lower court found that the complaint failed to state any claim upon which relief could be granted. In such circumstances, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Accordingly, our review employs the same standard trial courts follow in like situations. As set forth in syllabus point three *of Chapman v. Kane Transfer Company, Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), "[t]he trial court, in appraising the sufficiency of a complaint on·a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief (citation omitted)." *See also Highmark West Virginia, Inc. v. Jamie,* 221 W.Va. 487, 491 n. 4, 655 S.E.2d 509, 513 n. 4 (2007) ("The standard expressed in *Chapman* ... remains good law."). Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true. *John W. Lodge Distrib. Co. v. Texaco, Inc.,* 161 W.Va. 603, 604–05, 245 S.E.2d 157, 158–59 (1978). We keep these guidelines in mind while undertaking our review of the issues raised in this appeal.

## III. Discussion

Appellants maintain that the lower court erred in dismissing their claims against the real estate Appellees for breach of contract, negligence and fraud. All of the claims centered on the acts or omissions of Ms. Felton as the real estate salesperson. Ms. Hollandsworth and Double H. Realty were made parties to the suit based on respondeat superior and agency law principles.

At the heart of Appellants' claims is the omission from the July 5, 2004, contract of the condition contained in the March 29, 2004, contract essentially stating that the sale of the Nutter Fort house was contingent upon Appellants locating acceptable housing. As explained in the complaint, the negligence claim was based on Ms. Felton breaching a duty under the Real Estate License Act by

---

**7.** Appellants' complaint relates that the March 29, 2004, real estate contract "expired on or about June 13, 2005."

failing to include the conditional language in the July 5, 2004, contract. Similarly, the cause of action for fraud was explained in the complaint as Ms. Felton materially and falsely representing to Ms. Sedlock that this contingency language was included in the July 5, 2004, contract. The breach of contract claim is founded on Ms. Felton not fulfilling her verbal agreement with Ms. Sedlock to include this conditional language in the contract. We will address each of these interrelated claims in turn.

■ Appellants maintained below, as they do here, that Appellees were under a general duty[8] to include the desired conditional language under the express terms of West Virginia Code § 30–40–26(f) (2002) (2007 Repl. Vol.). West Virginia Code § 30–40–26(f) is within the Real Estate License Act and states: "Every licensee shall make certain that all the terms and conditions of a real estate transaction are contained in any contract prepared by the licensee."

In the October 24, 2006, dismissal order, the lower court appropriately noted that this statutory provision could not be read in a vacuum so as to impose a blanket duty on real estate sales people to include any and all possible terms and conditions in a real estate sales contract. The lower court particularly noted that:

> Section 30–40–26(f) of the West Virginia Code must be read with the remainder of Article 30 of the West Virginia Code, including Section 30–40–5(a)–(b), which states that activities normally performed by a lawyer are not included in the capacity of a real estate salesperson. *See* W.Va. Code § 30–40–5(a)–(b) (2006)[sic].

We further note that the significance of the contingency clause to Appellants in light of the circumstances may not have been apparent to Ms. Felton at the time she drafted the sales agreement. Under the facts presented in the complaint, Appellants had located acceptable housing at the time the July 5, 2004, contract was signed, so the contingency had been met. If the contingency clause were still desired by Appellants, they could have amended the contract before signing it. While Appellants contend that Ms. Felton told Ms. Sedlock at the time of signing the July 5, 2004, contract that the contingency clause was in the contract, we find no assertion in the complaint that Ms.Sedlock was operating under any disability when she signed the contract so as to render her incapable of reading and comprehending its terms before signing.

■ This Court has clearly stated that "in the absence of extraordinary circumstances, the failure to read a contract before signing it does not excuse a person from being bound by its terms." *Reddy v. Community Health Found. of Man,* 171 W.Va. 368, 373, 298 S.E.2d 906, 910 (1982). The record in *Reddy* did not suggest that the doctor was anything but an intelligent adult who entered the contract freely. Given these facts we said in *Reddy* that "[c]ontracts are reduced to writing so that there can be no subsequent argument concerning the terms of an agreement. A person who fails to read a document to which he places his signature does so at his peril.'" *Id.* In the earlier-decided case of *Southern v. Sine,* 95 W.Va. 634, 123 S.E. 436 (1924), language of certain deeds was at issue. The Court in *Sine* noted that the documents had been submitted to the complaining party for his inspection and the approval of his attorney, and that the facts did not demonstrate any effort to withhold or disguise the information contained in the documents. Thereafter, it was stated: "It was his duty to know [what was contained in the deeds]. The law says that he shall know. If he did not read the deeds at any time before acceptance it was clearly his fault and negligence." *Id.* at 643, 123 S.E. at 439.

■ Much like the situations presented in *Reddy* and *Sine,* Appellants' assertions in the case sub judice do not support the presence of extraordinary circumstances which would

---

8. Appellants also recited a list of specific duties in their complaint which they contended the West Virginia Real Estate Commission imposes on all licensees. No source was indicated for the list and the exhibits referred to in support of the list were not included in the record. The recited list of duties does not appear in the statutes governing licensure (W.Va.Code Chapter 30, Article 40) or the regulations promulgated by the West Virginia Real Estate Commission in effect at the time relevant to this case. *See* W.Va. 174 C.S.R 1 (2003). The current regulations also do not contain such a list of duties. W.Va. 174 C.S.R. 1 (2007).

obviate their obligation to read the contract before signing it. Nothing in the complaint indicated that Ms. Sedlock and Mr. Banish were not of mature age and adequate intellect to understand the contents of the contract, or that the contract was written in such small print or in such a manner as to deceive anyone of its inclusions or omissions. The contract at issue is a short document that includes on the front page a paragraph numbered twelve, entitled "ADDITIONAL TERMS AND CONDITIONS." In that section, two contingencies are hand printed on the face of the contract and are clearly discernable. In smaller print at the bottom of the first page, Ms. Sedlock initialed the blank line following the statement: "Seller has read this page." Ms. Sedlock also initialed page two of this contract in the section designated "ACCEPTANCE," which contains two paragraphs reading:

21. Are you, as Seller, relying upon any oral statements or representations made by the Purchaser, a real estate broker or agent that are not in this contract. [Ms. Sedlock answered in the negative by initialing the line following "No."]

22. Seller acknowledges that he/she has read and understands the provisions of this agreement and agrees to sell herein described property at the price, terms, and conditions set forth. Seller acknowledges receipt of copy of contract.

There is no suggestion of forgery of Ms. Sedlock's signature or that someone initialed or signed the contract for Ms. Sedlock.

In addition to our examination of the contract, we further note that no allegation is made by Appellants that they attempted to insert the contingency clause about locating acceptable housing before Ms. Sedlock signed the contract. Nor is there any indication that Ms. Sedlock was coerced, pressured or otherwise forced into signing the contract as it was presented to her. Given these particular circumstances, Ms. Sedlock's failure to read the contract before accepting regrettably appears to be due to her own "fault and negligence." *Sine,* 95 W.Va. at 643, 123 S.E. at 439.

With regard to the fraud claim, Appellants maintain that Ms. Felton misrepresented that the contingency clause about locating acceptable housing was in the sales contract she prepared. No assertion, however, is made that Ms. Felton tried to hide the omission of the clause or otherwise thwarted efforts of Appellants to discover the omissions in the contract which would overcome their obligation to read the document before signing it.

Without a showing of fraud or mistake, the breach of contract claim asserted in the complaint also is not actionable. The breach of contract claim is based on Ms. Felton's oral promise, made prior to or contemporaneously with the execution of the contract, that she would include the contingency clause about locating acceptable housing in the sales contract. As stated in syllabus point two of *Kanawha Banking & Trust Company v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225 (1947):

An unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution.

Equally relevant to the present case is syllabus point one of *Gilbert,* which states;

Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

Even if all of the allegations in the complaint are taken as true, Appellants claims can not proceed because Appellants can prove no set of facts in support of their claims which would entitle them to relief *See* Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977). There is no blanket duty for real estate sales people to draft sales agreements with anything other than the terms believed necessary to complete the sale. Since Appellants

had located suitable housing at the time the sales contract was drafted, the contingency clause hardly could be considered a term necessary to complete the sale. The complaint related no impediment or other extraordinary circumstance standing in the way of Appellants reading and otherwise reviewing the contract to be sure that all terms they deemed necessary were included before Ms. Sedlock signed the document. Given this set of facts, there is no legal reason why Appellants should be relieved of their responsibility to carefully read the contract before signing it. Since no assertion is made that Ms. Felton tried to hide the omission of the clause or otherwise thwarted efforts of Appellants to discover the omissions in the contract, there is no basis on which a claim of fraud may be proven. Finally, absent fraud or mistake, the oral representations Ms. Felton may have made to Appellants do not form the basis of a breach of contract claim. Consequently, dismissal of the claims against Appellees was proper and the order of the court below is affirmed.

### IV. Conclusion

Based upon the foregoing, the October 24, 2006, order of the Circuit Court of Harrison County dismissing, with prejudice, the claims against the real estate defendants below below is affirmed.

Affirmed.