IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0722

_____

FILED

**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JANE YURISH and KRISTEN DOUTY,
Third-Party Plaintiffs Below,
Petitioners

v.

SINCLAIR BROADCAST GROUP, INC.,
BARRINGTON BROADCASTING GROUP, LLC,
CUNNINGHAM BROADCASTING CORPORATION,
DEERFIELD MEDIA, INC.,
GOCOM MEDIA OF ILLINOIS, LLC,
GRAY TELEVISION, INC.,
HOWARD STIRK HOLDINGS, LLC,
ROBERTS MEDIA, LLC,
NEW AGE MEDIA,
NEXSTAR MEDIA GROUP, INC.,
TEGNA, INC.,
E.W. SCRIPPS COMPANY,
THOMAS BROADCASTING, INC.,
RSV NG, LLC, and
PRESTON and SALANGO, PLLC,
Defendants Below,
Respondents

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Laura V. Faircloth, Judge
Civil Action No. CC-02-2019-C-93

AFFIRMED

_____

Submitted: October 26, 2021
Filed: November 19, 2021

Christian J. Riddell, Esq.
The Riddell Law Group
Martinsburg, West Virginia
Counsel for Petitioners

Thomas V. Flaherty, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia

Stuart A. McMillan, Esq.
J. Tyler Mayhew, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondent
 RSV NG, LLC

Ben Salango, Esq.
Preston & Salango, PLLC
Charleston, West Virginia
Counsel for Respondent
 Preston and Salango, PLLC

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*"  Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "A motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

3.      "The constitutionality of a statute is a question of law which this Court reviews *de novo.*" Syllabus Point 2, *In re Brandi B.*, 231 W. Va. 71, 743 S.E.2d 882 (2013).

4.      The West Virginia Wiretapping and Electronic Surveillance Act, West Virginia Code §§ 62-1D-1 through 16 runs afoul of the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution and is unconstitutional as applied to the extent that it allows a civil action to be maintained against an innocent third party who publishes information of public concern that was obtained by the unlawful interception of wire, oral, or electronic communication in violation of the statute but who did not participate in the unlawful interception of the communication.

Armstead, Justice:

Jane Yurish and Kristen Douty ("Petitioners") appeal the Circuit Court of Berkeley County's final order denying their Rule 60(b) Motion for Relief from Final Order, in which the circuit court granted motions to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure filed by Respondents[1] Barrington Broadcasting Group, LLC; Cunningham Broadcasting Corporation; Deerfield Media, Inc.; GOCOM Media Of Illinois, LLC; Gray Television, Inc.; Howard Stirk Holdings, LLC; Roberts Media, LLC; New Age Media; Nexstar Media Group, Inc.; Sinclair Broadcast Group, Inc.; TEGNA; Inc.; Thomas Broadcasting, Inc.; E.W. Scripps Company;[2] and Preston and Salango, PLLC. In the case of *Bartnicki v. Vopper*, 532 U.S. 514 (2001), the United States Supreme Court determined that a Pennsylvania statute providing civil remedies to those aggrieved by the interception and disclosure of illegally intercepted communications was unconstitutional as applied to information of public concern that was published by those who did not engage in illegal conduct, but who knew or should have known that the communications had been illegally obtained. In this matter, we likewise find that West Virginia's similar statutory scheme is unconstitutional as applied and affirm the circuit court.

---

[1] Throughout this opinion, "Respondents" means all named Respondents. Respondents are also in certain references divided into two groups – "Media Respondents," which are all named Respondents except Preston and Salango, PLLC and "Preston and Salango, PLLC." "Preston and Salango, PLLC," means only that respondent.

[2] There were two additional media defendants below, Waitt Broadcasting, Inc. and West Virginia Radio Corporation. Petitioners did not appeal the circuit court's order as it related to those defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because we must accept as true all allegations contained in the Third-Party Complaint, this recitation of facts derives from the Third-Party Complaint filed by Petitioners.

Petitioners were employees of the Berkeley County Board of Education at Berkeley Heights Elementary School. A.P. was a special education student in their classroom. Petitioners allege that A.P.'s mother violated both the West Virginia Wiretapping and Electronic Surveillance Act[3] ("West Virginia Act") and its federal construct[4] ("Federal Act") by placing a secret audio recording device in A.P.'s hair. After having the surreptitious recording device placed in her hair, A.P. went to school and the recording device picked up all ambient noise, conversations, and statements made within audible range of her hair. After the recording was made, A.P.'s mother, or someone acting on her behalf, edited approximately sixty to one hundred and twenty seconds of clips from that recording and provided it to the Respondents. The recordings that were disseminated

---

[3] *See* W. Va. Code §§ 62-1D-1 -16 (2020 Repl. Vol.)

[4] *See* 18 U.S.C. §§ 2510 - 2523.

by A.P.'s mother to Respondents purported to show Petitioners physically and verbally abusing students.[5]

All Respondents, except Preston and Salango, PLLC, are various media groups or outlets. The edited audio clip was played by Respondents in numerous broadcast areas nationwide, placed upon social media, and was shared on the internet. The Berkeley County Board of Education subsequently requested that Petitioners resign their employment in lieu of termination. Petitioners offered their resignations.

Petitioners' Third-Party Complaint alleged that: "It was known by all [Respondents] that the footage came from a secret recording which was placed in the hair of A.P. and for which no consenting party was present," and Respondents "violated the provisions of [the West Virginia Act] when [they] intentionally used and disclosed unlawfully intercepted communications of [Petitioners] while having reason to know that

---

[5] As noted by the circuit court, the allegations in the Third-Party Complaint are derivative of the claims contained in the underlying complaint alleging abuse by Petitioners of special education children at Berkeley Heights Elementary School. Those allegations, according to the circuit court, dealt with two children in A.P.'s special education classroom whose behavior "underwent significant adverse changes during the time they were attending school in the [Petitioners'] classroom."

Subsequent to the events that give rise to the allegations raised in the underlying complaint, the West Virginia Legislature enacted Senate Bill 632 during the 2019 Legislative Session. 2019 W. Va. Acts, c.94, eff. July 1, 2019. The Legislature made a few non-substantive changes to this law during the 2020 Legislative Session. 2020 W. Va. Acts, c.111, eff. March 6, 2020. County boards of education are now required to place cameras in all "self-contained classrooms" for special education that monitor and record "all areas" of the classroom. W. Va. Code §§ 18-20-11(e)(1)(A) & (B) (2020).

3

the information was obtained through the interception of oral communications in violation of" the West Virginia Act. The Third-Party Complaint also alleged that the use and disclosure of the "unlawful recording . . . further violated the provisions of" the Federal Act. Conversely, nowhere in the 321 numbered allegations contained in the Third-Party Complaint is it alleged that any Respondent had any hand in either A.P.'s classroom recording or in A.P.'s mother's subsequent edit of that recording.

Respondents filed motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure[6] arguing that the United States Supreme Court's decision in *Bartnicki* is controlling authority and barred all causes of action raised in the Third-Party Complaint by operation of the First Amendment to the United States Constitution. The circuit court agreed. In its Order Granting Motion to Dismiss Third-Party Complaint Against Media [Respondents] and Preston and Salango, PLLC, the circuit court, relying upon *Bartnicki*, found that:

> [E]ven if the recording had been obtained in violation of the [West Virginia Act] and [Federal Act], the claims against the Media [Respondents] are dismissed as a matter of law as the

---

[6] Rule 12(b)(6) provides:

> b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted. . . .

4

broadcasts and recording pertained to a matter of great public importance – alleged child abuse in public schools – and the application of the provisions of the state and federal wiretap laws against the Media [Respondents] would violate their constitutional free speech rights. The same analysis applies to postings of news articles by Preston [and] Salango[, PLLC].

It is accordingly the opinion of this Court that there can be no greater matter of public concern than the manner in which our children are addressed and treated in the public school system, which is funded by taxpayer dollars. The public has a right to know what transpires in public schools and the First Amendment protects dissemination of that information. For this Court to rule otherwise would be a chilling effect on the First Amendment to the United States Constitution and to our free press and media, as well as public discussion. It would likewise serve as a shield to hide and keep secret conduct, [as] the public has a right to know what occurs in our public schools.

The publications by the Media [Respondents] and Preston [and] Salango[, PLLC] do not qualify as commercial speech because those publications do more than simply propose a commercial transaction.

After the circuit court entered its final order granting Respondents' motions to dismiss, Petitioners filed a motion below seeking relief from the final order pursuant to West Virginia Rule of Civil Procedure 60(b).[7] In that motion, Petitioners sought

---

[7] Rule 60(b) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1)

(continued . . .)

5

clarification of the circuit court's order as it related to whether the publication of the audio recording on Preston and Salango, PLLC's webpage was commercial speech. Attached to that motion was Exhibit B, which Petitioners claimed was newly discovered and was alleged to contain the following language, "[i]f you are a parent of a special needs child who attended Berkeley Heights Elementary School between 2016 and 2019 and suspect your child may have been physically or verbally abused, please contact Preston [and] Salango[, PLLC]." We would note that Exhibit B in the Appendix is illegible.

Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Thereafter, the circuit court entered an order denying relief to Petitioners but did clarify the circuit court's reasoning regarding its determination that Preston and Salango, PLLC's, publication of the recording was not commercial speech. It is from the circuit court's grant of the motion to dismiss and subsequent denial of the Rule 60(b) motion that Petitioners appeal.

## II. STANDARD OF REVIEW

We have previously held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008) (citation omitted). Finally, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syllabus Point 2, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted). We are also mindful that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019) (citation omitted).

7

Ultimately, to reach our conclusion in this matter requires this Court to pass judgment on whether a statute, as applied to the facts of this case, is constitutional. "The constitutionality of a statute is a question of law which this Court reviews *de novo*." Syllabus Point 2, *In re Brandi B.*, 231 W. Va. 71, 743 S.E.2d 882 (2013) (citation omitted). In such posture, "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syllabus Point 3, *Carvey v. W. Virginia State Bd. of Educ.*, 206 W. Va. 720, 527 S.E.2d 831 (1999) (internal quotation marks omitted) (citations omitted). With these principles in mind, we proceed to analyze the arguments raised by this appeal.

### III. ANALYSIS

This matter comes before the Court on the circuit court's grant of a motion dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure and subsequent denial of a Rule 60(b) motion requesting clarification of the circuit court's order dismissing the case, based upon newly discovered evidence. As such, we must make certain assumptions as to the facts. Because of this procedural posture, we accept as true the allegation that the audio recording was unlawfully made.[8] *See Sedlock*, 222 W.Va. at

---

[8] In West Virginia, "[i]t is lawful . . . for a person to intercept a wire, oral or electronic communication . . . where one of the parties to the communication has given

(continued . . .)

8

550, 668 S.E.2d at 179. Given that question is not subject to conjecture, the only questions that must be resolved in this appeal are: 1) Whether the audio recording of events in a special education classroom is a matter of public concern; 2) Whether Petitioners' Third-Party Complaint states a claim for relief in light of the United States Supreme Court's decision in *Bartnicki*; and, 3) Whether the publication of the recording by Preston and Salango, PLLC, constitutes commercial speech, which is entitled to lesser First Amendment protection?[9]

Applicable to all of these issues are the provisions of the United States and West Virginia Constitutions relating to freedoms of speech and press. The First Amendment to the United States Constitution provides, in pertinent part, "Congress shall

---

prior consent to the interception . . . ." W. Va. Code § 62-1D-3(e), in part. Substantially similar language also is found in 18 U.S.C. § 2511(2)(d). The Third-Party Complaint specifically alleges that A.P. "was not legally capable of consenting, was not offered the opportunity to give her consent, and did not, at any point, give actual consent" to intercepting Petitioners' oral communications in the classroom. Because we accept this allegation as true strictly for purposes of resolving the issue presented in the context of Respondents' Rule 12(b)(6) motion to dismiss, we do not address whether A.P. was or was not "legally capable of consenting" to the interception.

[9] Respondent RSV NG, LLC argues in its separate summary response that Petitioners' appeal should be denied on collateral estoppel grounds because Petitioners did not appeal the judgment below as to two named media defendants – Waitt Broadcasting, Inc. and West Virginia Radio Corporation. Asked about this issue at oral argument, counsel specifically said he was not advocating this position. Moreover, because we affirm the circuit court's ruling pursuant to the holding in *Bartnicki*, it is not necessary for us to determine the validity of RSV NG, LLC's alternative grounds to affirm the circuit court's order. Accordingly, we do not address this issue. *See Perrine v. E.I. du Pont de Nemours and Co.*, 225 W. Va. 482, 601, 694 S.E.2d 815, 934 *on petition for rehearing* (2010).

9

make no law . . . abridging the freedom of speech, or of the press. . . ."  U.S. CONST.

amend. I.  Likewise, West Virginia's Constitution states:

> No law abridging the freedom of speech, or of the press, shall be passed; but the Legislature may, by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

W. Va. CONST. art. III, §7.  We have previously stated that:

> The First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution are virtually identical in pertinent parts. Both constitutional provisions prohibit the making of any law abridging the freedom of speech or of the press. For purposes of this opinion, we use the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution interchangeably. Article I, Section 1 of the West Virginia Constitution recognizes that the United States Constitution shall be the supreme law of the land. Accordingly, the decisions of the United States Supreme Court interpreting the First Amendment are binding on this Court and, consequently, will be used throughout our discussion of this issue. *See Pushinsky v. West Virginia Bd. of Law Examiners,* 164 W.Va. 736, 744, 266 S.E.2d 444, 449 (1980).

*State By & Through McGraw v. Imperial Mktg.*, 196 W. Va. 346, 359 n.43, 472 S.E.2d 792, 805 n.43 (1996). Thus, the United States Supreme Court decisions in First Amendment cases are binding precedent on this Court and will be treated as such.  We will now address each of the issues raised by the Respondents.

10

1. Public Concern

The threshold question we must resolve is whether the speech at issue (i.e., the recorded communication) involves a matter of public concern. Matters of public concern must be openly discussed in our constitutional republic. As the United States Supreme Court has held:

> Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," *Connick*, *supra,* at 146, 103 S.Ct. 1684, or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public," *San Diego, supra,* at 83-84, 125 S.Ct. 521. See *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492–494, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Time, Inc. v. Hill,* 385 U.S. 374, 387–388, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011). To determine if speech regards a matter of public concern we must examine "'the content, form, and context of a given statement, as revealed by the whole record.' *See Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)." *Alderman v. Pocahontas Cty. Bd. of Educ.*, 223 W. Va. 431, 442, 675 S.E.2d 907, 918 (2009). "In considering content, form, and context, no

factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder* at 454.

The content of the speech at issue in this appeal clearly relates to "broad issues of interest to society at large."[10] *Id*. We emphatically agree with the circuit court that there can be no doubt that alleged child abuse in a public school's special education classroom is a matter of grave public concern. What was recorded in A.P.'s classroom goes to the heart of our society's need for transparency in its public education system. Thus, the speech at issue clearly and unequivocally related to a matter of public concern.

Apart from the content of the speech, the form and context also demonstrate the speech was of public concern. The nationwide publication of the recording on television and over the internet in conjunction with news stories and blogs reflects that it was "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder* at 453 (internal quotation marks and citations omitted).

---

[10] Petitioners attempt to distinguish what represents speech of public concern based upon the locality in which the speech is published, differentiating between speech published in West Virginia and speech published in other states. To say that the Constitution stops at the state line defies logic. The interest in whether speech is of public concern is not constrained by geographic limits.

We therefore conclude that the publication of the recording in this case was a matter of public concern.

2.      *Bartnicki*

We now move to the question of whether *Bartnicki* applies to the facts of this matter.  Our first inquiry in this discussion is a comparison of the West Virginia Act at issue here with the Pennsylvania Act at issue in *Bartnicki*.  *Compare* W. Va. Code § 62-1D-12 (1987), *with* 18 Pa. Cons. Stat. § 5725(a) (1988).  First, the West Virginia Act provides a civil remedy for the recordation and distribution of protected communications:

> (a) Any person whose wire, oral or electronic communication is intercepted, disclosed, used or whose identity is disclosed in violation of this article shall have a civil cause of action against any person who so intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications, and shall be entitled to recover from any such person or persons:
> (1) Actual damages, but not less than one hundred dollars for each day of violation;
> (2) Punitive damages, if found to be proper; and
> (3) Reasonable attorney fees and reasonable costs of litigation incurred.

W. Va. Code § 62-1D-12 (1987).  Using strikingly similar language, the Pennsylvania Act at issue in *Bartnicki* also provides for a civil remedy:

> (a) Cause of action.--Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person

13

to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:
(1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher.
(2) Punitive damages.
(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

18 Pa. Cons. Stat. § 5725(a) (1988) ("Pennsylvania Act"). It was this statutory provision that was found to be unconstitutionally applied in *Bartnicki*.

The facts in *Bartnicki* involved a contentious contract negotiation between a teachers' union and the school board. *Bartnicki* at 518. A telephone call between two union representatives was illegally recorded. *Id*. During that conversation, some illegal activity was discussed:

"'If they're not gonna move for three percent, we're gonna have to go to their, their homes. . . . To blow off their front porches, we'll have to do some work on some of those guys. (PAUSES). Really, uh, really and truthfully because this is, you know, this is bad news. (UNDECIPHERABLE).'"

*Id.* at 518-19. In the amended complaint in *Bartnicki*, it was alleged that the:

[T]elephone conversation had been surreptitiously intercepted by an unknown person using an electronic device, that Yocum had obtained a tape of that conversation, and that he intentionally disclosed it to Vopper, as well as other individuals and media representatives. Thereafter, Vopper and other members of the media repeatedly published the contents of that conversation. The amended complaint alleged that each of the defendants "knew or had reason to know" that the

14

recording of the private telephone conversation had been obtained by means of an illegal interception.

The plaintiffs in *Bartnicki* sought damages under both the Pennsylvania Act and the Federal Act. *Id.* at 519. The United States Supreme Court recognized the constitutional implications of allowing the lawsuit to move forward:

> The constitutional question before us concerns the validity of the statutes as applied to the specific facts of these cases. Because of the procedural posture of these cases, it is appropriate to make certain important assumptions about those facts. We accept petitioners' submission that the interception was intentional, and therefore unlawful, and that, at a minimum, respondents "had reason to know" that it was unlawful. Accordingly, the disclosure of the contents of the intercepted conversation by Yocum to school board members and to representatives of the media, as well as the subsequent disclosures by the media defendants to the public, violated the federal and state statutes. Under the provisions of the federal statute, as well as its Pennsylvania analogue, petitioners are thus entitled to recover damages from each of the respondents. The only question is whether the application of these statutes in such circumstances violates the First Amendment.

*Id.* at 524–25 (internal footnote omitted). The issue framed by the Supreme Court was: "Where the punished publisher of information has obtained the information in question in a manner lawful in itself but from a source who has obtained it unlawfully, may the government punish the ensuing publication of that information based on the defect in a chain?" *Id.* at 528. The *Bartnicki* Court then analyzed a host of former precedents:

> Our opinion in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), reviewed many of the decisions that settled the "general proposition that freedom of expression upon public questions is secured by the First Amendment." *Id.,* at 269, 84 S.Ct. 710; see *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Bridges v. California,* 314 U.S. 252, 270, 62 S.Ct. 190,

86 L.Ed. 192 (1941); *Stromberg v. California,* 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Those cases all relied on our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times,* 376 U.S., at 270, 84 S.Ct. 710; see *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *De Jonge v. Oregon,* 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278 (1937); *Whitney v. California,* 274 U.S. 357, 375–376, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring); see also *Roth,* 354 U.S., at 484, 77 S.Ct. 1304; *Stromberg,* 283 U.S., at 369, 51 S.Ct. 532; *Bridges,* 314 U.S., at 270, 62 S.Ct. 190. It was the overriding importance of that commitment that supported our holding that neither factual error nor defamatory content, nor a combination of the two, sufficed to remove the First Amendment shield from criticism of official conduct. *Id.,* at 273, 62 S.Ct. 190; see also *NAACP v. Button,* 371 U.S. 415, 445, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); *Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); *Pennekamp v. Florida,* 328 U.S. 331, 342, 343, n. 5, 345, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); *Bridges,* 314 U.S., at 270, 62 S.Ct. 190.

*Id.* at 534–35. From that analysis, the United States Supreme Court held that, "[w]e think it clear that parallel reasoning requires the conclusion that a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Id.* at 535.

The United States Supreme Court's holding in *Bartnicki* is in accord with a prior decision of this Court. In *State ex rel. Daily Mail Publishing Co. v. Smith*, 161 W. Va. 684, 248 S.E.2d 269 (1978) ("*Daily Mail*"), we were asked to determine if a law prohibiting the publication of the name of a juvenile who shot and killed a classmate was

16

unconstitutional as a prior restraint of speech. *Id.*, W. Va. at 685, S.E.2d at 270. We found

the statute in question to be unconstitutional as to such application, holding:

> To the extent that W.Va. Code, 49-7-3 (1941) makes it a criminal offense for a newspaper to publish the name of a child in any proceeding under Chapter 49 of the W.Va. Code, without the prior approval of the trial court, W.Va. Code, 49-7-3 (1941) is unconstitutional as repugnant to the First Amendment to the Constitution of the United States, because it creates an impermissible prior restraint on the freedom of the press.

Syllabus Point 2, *id.*, *aff'd sub nom. Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979)

("*Smith*"). The United States Supreme Court affirmed this result and elaborated that "[i]f

the information is lawfully obtained, as it was here, the state may not punish its publication

except when necessary to further an interest more substantial than is present here." *Smith*,

443 U.S. at 104.

Petitioners maintain that the Constitution allows their case to move forward.

At oral argument they pointed this Court to a United States Court of Appeals decision from

the Fifth Circuit, *Peavy v. WFAA TV*, 221 F.3d 158 (5th Cir. 2000), as support for their

position. We have reviewed this case and do not believe it supports Petitioners'

contentions. First, it was decided by a federal appeals court prior to the United States

Supreme Court's decision in *Bartnicki*. *Peavy*, 221 F.3d 158. Second, and more

importantly, as noted in *Bartnicki*, the publishing media defendant in *Peavy* had unclean

hands and "in fact participated in the interceptions at issue." *Bartnicki* at 522 n.5. That is

not the factual situation here. In this case, Petitioners make no factual allegation that

17

Respondents in any way participated in the efforts to record the information that they subsequently disseminated.

We are persuaded that the factual scenario in *Bartnicki* is nearly identical to the factual scenario alleged in the Third-Party Complaint in the present case. In both cases, the defendants were alleged to have published recordings that they knew or should have known were created in violation of state and federal wiretapping laws. Importantly, it was not alleged in either case that the media defendants were in any way involved in creating the recordings. Thus, *Bartnicki* compels us to find that the West Virginia Act is unconstitutional as applied.[11] To do otherwise would run afoul of the Constitution of the United States, the Constitution of West Virginia and the *Bartnicki* Court's sound reasoning. Petitioners additionally alleged violations of the substantially similar Federal Act. We believe *Bartnicki* clearly precludes Petitioners' action under the Federal Act as well. Accordingly, the West Virginia Wiretapping and Electronic Surveillance Act, West Virginia Code §§ 62-1D-1 through 16 runs afoul of the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution and is unconstitutional as applied to the extent that it allows a civil action to be maintained against an innocent third party who publishes information of public concern that was obtained by

---

[11] Our determination that the West Virginia Act is an unconstitutional violation of the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution is limited to its application to innocent third parties who did not take part in the unauthorized interception or recording of the information and should not be interpreted as a declaration that such statute is unconstitutional in all cases.

18

the unlawful interception of wire, oral, or electronic communication in violation of the statute but who did not participate in the unlawful interception of the communication.

3.      Commercial Speech

Petitioners next argue that the publication by Preston and Salango, PLLC, constituted commercial speech and, as such, is actionable because commercial speech may be regulated under the First Amendment. We have adopted the United States Supreme Court's approach on commercial speech in such cases, acknowledging that such speech is afforded lesser protection:

> In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557 . . . (1980), the United States Supreme Court adopted a four[-]part test for determining the validity of governmental regulation of commercial speech, which is generally accorded "a lesser protection . . . than . . . other constitutionally guaranteed expression."

*Fisher v. City of Charleston*, 188 W. Va. 518, 524 n.11, 425 S.E.2d 194, 200 n.11 (1992) (internal citations omitted).

> [W]e must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson* at 566. We adopted the *Central Hudson* test in Syllabus Point 3 of *Lawyer Disciplinary Board v. Allen*, 198 W. Va. 18, 479 S.E.2d 317 (1996), where we held:

19

Commercial speech that is not unlawful or misleading may be regulated only if the government satisfies the remaining elements of the test set forth in *Central Hudson Gas v. Public Service Com'n of New York,* 447 U.S. 557, 564–65, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341, 350–51 (1980), which requires first, that the government assert a substantial interest in support of its regulation; second, that the government demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, that there is a reasonable fit between the regulation and the State's interest.

Syllabus Point 3, in part, *Id*. However, neither *Central Hudson* nor *Allen* defined

specifically what constitutes commercial speech. The Fourth Circuit has reasoned that

"commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *Greater Baltimore Ctr.*, 721 F.3d at 284 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001)). However, because "application of this definition is not always a simple matter," *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 440 (4th Cir. 1999), some speech outside this "core notion" may also be deemed commercial. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). Courts rely on three factors to identify such commercial speech: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Greater Baltimore Ctr.*, 721 F.3d at 285 (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990)).

Because of the "difficulty of drawing bright lines that will clearly cabin commercial speech," the inquiry is fact-intensive. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). It is also one in which "context matters." *Greater Baltimore Ctr.*, 721 F.3d at 286.

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101, 108 (4th Cir. 2018).

Reading the Third-Party Complaint in the light most favorable to the Petitioners clearly shows there to be insufficient factual allegations contained within its four corners to state a cause of action against Preston and Salango, PLLC, much less to support a finding that the publication of the recording by Preston and Salango, PLLC, constituted a "commercial speech" exception to the holding in *Bartnicki*. The allegations against Preston and Salango, PLLC, are that it merely published the previous news stories that contained the audio recording at issue. Petitioners did not allege that Preston and Salango, PLLC, acted differently than the Media Respondents in publishing the communications or was motivated by any different goal in regard to such publication. Clearly, the right of all Respondents to publish the information, having taken no role in its recording, was protected by the First Amendment. Respondents pled no facts supporting an exception to such protection. We have previously stated:

> In *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981), we held that the plaintiffs had alleged "various factual matters in support of their assertion that the defendants [had] acted in an arbitrary and capricious manner." *Id.* 168 W.Va. at 167, 287 S.E.2d at 159. We recognized, however, that
>> liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading. As stated in Lugar and Silverstein, *West Virginia Rules of Civil Procedure* (1960) at 75: 'Simplicity and informality of pleading do not permit carelessness and sloth: the plaintiff's attorney must know every essential element of his cause of action and must state it in the complaint.'

21

> *Id.* 168 W.Va. at 164, 287 S.E.2d at 157–58. *Accord, Fass v. Nowsco Well Service, Ltd.,* 177 W.Va. 50, 52, 350 S.E.2d 562, 564 (1986).

*Par Mar v. City of Parkersburg*, 183 W. Va. 706, 710-11, 398 S.E.2d 532, 536-37 (1990).

Petitioners counter that Exhibit B, which is purportedly an exhibit from the firm's web page, demonstrates that the speech of Preston and Salango, PLLC, was commercial. However, the document attached to the 60(b) motion and contained in the appendix record is largely illegible. Nonetheless, we cannot discern from looking at this document that it solely proposes a commercial transaction. Further, Petitioners misapprehend the question before the Court, namely whether the Third-Party Complaint contained allegations sufficient to survive Respondents' Motion to Dismiss.

Although Petitioners may not be expected to anticipate all defenses that may be raised by Respondents to the Third-Party Complaint, *See* Syllabus Point 5, *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d. 838 (2021), in this case Petitioners are seeking to characterize the communications as those that fall within a narrow exception to the well-established First Amendment principle that speech regarding matters of public concern is offered broad protection. In order to satisfy such exception, Petitioners must point to some factual allegations in their Complaint that Preston and Salango, PLLC's, publication of the communications was motivated by profit or commercial goals.

22

In *Greater Baltimore*, the court defined commercial speech as speech that usually "does no more" than propose a commercial transaction. *Greater Baltimore*, 879 F.3d 101 at 108. Nowhere in the Third-Party Complaint is it alleged that the firm's publication proposed a commercial transaction. In addition, the Third-Party Complaint is devoid of any allegations that Preston and Salango's actions were an advertisement that referred to a specific product or service or allegations regarding what economic motivation, if any, Preston and Salango, PLLC, had in publishing the speech. Even when we assume all facts as alleged are true, Petitioners have made insufficient factual allegations to withstand a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. We find that the circuit court did not err in finding that the social media and internet posts by Preston and Salango, PLLC, were afforded the full protection guaranteed by the First Amendment and our state constitution for speech relating to matters of public concern.

## IV. CONCLUSION

For the foregoing reasons, we affirm the circuit court.

Affirmed.