No. 21-0905, *West Virginia Division of Corrections & Rehabilitation v. Damein Robbins*

No. 21-0906, *Isaiah Blancarte & Bryon Whetzel v. Damein Robbins*

**FILED**
**June 9, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, concurring, in part, and dissenting, in part:

The majority opinion correctly affirms the circuit court's refusal to dismiss Damein Robbin's claims against Officers Isaiah Blancarte and Bryon Whetzel (the "Officers") and properly reverses the circuit court's refusal to dismiss Mr. Robbins's negligent training and supervision claim against the West Virginia Division of Corrections and Rehabilitation ("DOC"); therefore, I concur with Part III.A. and Part III.B.1. of the majority opinion. However, because I believe that the alleged actions of the Officers fell outside the scope of their employment, I respectfully dissent in relation to Part III.B.2. of the majority opinion and would reverse the circuit court's refusal to dismiss Mr. Robbins's vicarious liability claim against DOC.

A "state agency may be vicariously liable for the wrongful acts of a[n] [employee] committed *within the scope of the* [*employee*]*'s employment*." *Maston v. Wagner*, 236 W. Va. 488, 507, 781 S.E.2d 936, 955 (2015) (emphasis added). Whether the employee acted within the scope of his employment is a dispositive issue. A state agency is "immune from vicarious liability" when the "employee is determined to have been acting outside of the scope of his duties, authority, and/or employment[.]" Syl. Pt. 12, in part, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

1

In this case, the circuit court found that "monitoring the inmates and taking steps to protect inmates from physical harm is a primary charge of DOC[] and its employees[,]" and the circuit court appeared to believe that this finding showed that the Officers committed their alleged acts within the scope of their employment. However, as the majority opinion observes, "'[s]cope of employment' is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the *purpose of the act*." *Griffith v. George Transfer & Rigging, Inc.*, 157 W. Va. 316, 326, 201 S.E.2d 281, 288 (1973) (emphasis added). Among these considerations, the "purpose of the act" plays an especially prominent role. We have said that this consideration "is of critical importance" to our scope-of-employment analysis and "permeates our caselaw[.]" *A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769. Indeed, we have stated that an employee's conduct "is not within the scope of employment if it is [1] different in kind from that authorized, [2] far beyond the authorized time or space limits, *or* [3] too little actuated by a purpose to serve the master." *Id.* (original emphasis removed; new emphasis added) (quoting Restatement (Second) of Agency § 228 (1958)). Thus, a finding that an employee's act or omission was "too little actuated by a purpose to serve the master" is sufficient, by itself, for concluding that the employee acted outside the scope of his employment.

Scope of employment is usually a jury question. *See A.B.*, 234 W. Va. at 509, 766 S.E.2d at 768. However, there are times when "the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." *Id.* (quoting *Mary M. v. City*

2

*of Los Angeles*, 54 Cal. 3d 202, 213, 814 P.2d 1341, 1347 (1991)). At such times, and when the relevant facts are not in dispute, we are "in no way precluded from making a determination, as a matter of law, as to 'scope of employment[.]'" *A.B.*, 234 W. Va. at 509, 766 S.E.2d at 768. Because this case is before us on an appeal from a circuit court order denying a motion to dismiss, we take "all" of Mr. Robbins's "allegations as true" and "construe the [amended] complaint in the light most favorable" to him. *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (per curiam). The question, then, is whether a jury could reasonably find that Officers Blancarte and Whetzel purposed to serve DOC when they committed the acts or omissions ascribed to them in the amended complaint. In my view, no jury could reasonably make such a finding.

According to the amended complaint, Mr. Robbins served a brief period of incarceration at Potomac Highlands Regional Jail from Friday to Sunday during a week in July 2018. During intake, other inmates learned that he was a sex offender, which led to threats of bodily harm. He requested a transfer from the misdemeanor pod, and he was moved to the "A-6" felony lockdown pod. This pod was a "segregated" unit, and he was informed both (a) that no one could *enter* his cell and (b) that he could not *leave* his cell. Nevertheless, early Sunday morning, three other A-6 inmates entered his lockdown cell after Officer Whetzel, the tower officer, "unlocked the cell door and permitted them entry." Once inside, the inmates closed the door, covered its windows, and grievously assaulted Mr. Robbins for "multiple hours." As a result, he suffered "multiple" broken ribs and a fractured orbital bone in his cheek. According to the assailants, "this is what happens to sex offenders." The inmates also "cut off" his hair with a "makeshift weapon." At some

3

point, the inmates removed him from the cell and "paraded" him "around the pod" to humiliate him and "show off" their gruesome handiwork—a fact that, as the majority opinion observes, indicates that his "injuries were obvious while the assault continued." The assault continued until approximately 4:45 p.m. on Sunday, when he was released. Though Officer Whetzel observed the assailants parading Mr. Robbins around the pod, he did not intervene. Likewise, Officer Blancarte, who was "rover" for the pod, ignored the assault and allowed inmates to roam the pod and enter Mr. Robbins's cell. Mr. Robbins's injuries, however, were sufficiently obvious that a different corrections officer, who processed Mr. Robbins for release, asked who had assaulted him. When his wife saw his injuries, she took him to a hospital. He was later transferred to a "trauma ward" at a different hospital, where he remained until Wednesday.

Those are, again, the facts according to the amended complaint, and the story they tell plainly reflects a deliberate and malicious purpose on the part of the Officers to allow, or even facilitate, a heinous and degrading assault upon Mr. Robbins. If Mr. Robbins proves the facts alleged in the amended complaint, I fail to see how a jury could reasonably find that the Officers were "actuated by [*any*] purpose to serve" DOC, much less "too little actuated" by such purpose. *A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769 (quoting Restatement (Second) of Agency § 228 (1958)). In my view, this places the Officers' alleged acts and omissions outside the scope of their employment and immunizes DOC from vicarious liability for the Officers' conduct.

The majority opinion attempts to avoid this conclusion by noting that "an employer may be liable for the conduct of an employee, even if the specific conduct is

4

unauthorized or contrary to express orders, so long as the employee is acting within his general authority and for the benefit of the employer." *Travis v. Alcon Lab'ys, Inc.*, 202 W. Va. 369, 381, 504 S.E.2d 419, 431 (1998). However, the operative words are "so long as" and "for the benefit of the employer." *Id.* I view this standard to be analogous to the standard set forth in *A.B.*, which provides that, for an act to be within an employee's scope of employment, it must be "actuated, at least in part, by a *purpose to serve the master*[.]" *A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769 (quoting Restatement (Second) of Agency § 228 (1958)). Because I can discern no such purpose "to serve the master" in the Officers' alleged acts and omissions, I would reverse the circuit court's refusal to dismiss Mr. Robbins's vicarious liability claim against DOC. Accordingly, while I concur with Part III.A. and Part III.B.1. of the majority opinion, I respectfully dissent with respect to Part III.B.2.